HAMILTON *v.* MILLER, et al.

Apr. 20, 1953

No. 38691 28 Adv. S. 21 64 So. 2d 147

*M. M. Roberts,* for appellants.

*Hannah, Simrall & Aultman,* for appellees.

ROBERDS, P. J.

Miller Lumber Company, a corporation, filed its declaration in this action against F. S. Glenn and T. M. Hamilton, Jr., a partnership doing business as building contractors, to recover the sum of $1,102.18, value of lumber plaintiff sold and delivered defendants.

Defendants admitted owing $744.69, which had been tendered to and refused by plaintiff. They denied they owed plaintiff an item of $280.17 and another of $77.12, a total of $357.29, both of which were included within the $1,102.18. They further plead that plaintiff was

estopped, by the circumstances hereinafter set out, to assert liability for those items, and also that the parties had, by a stated account, settled the amount owing, which did not include the two items in dispute.

Later, plaintiff corporation was dissolved and on September 5, 1950, the action was revived in the name of A. L. Miller and M. M. Miller, the sole stockholders thereof.

The suit was in the county court and the issues were tried by the county judge without a jury. On September 23, 1950, he rendered judgment against defendants for $1,102.18, the amount for which suit was brought.

On September 30, 1950, defendants paid $744.89, and the parties, by agreement, entered an amended judgment against defendants for said sum of $357.29.

Defendants appealed from the amended judgment to the circuit court. The trial judge of that court affirmed liability of defendants for said two items, plus interest and damages, the judgment being for $408.97. From that judgment Hamilton appealed to this court. The partnership of Glenn & Hamilton, as between themselves, was dissolved about May 31, 1949.

The first question is whether the county and circuit judges were justified in finding, as a fact, that the lumber, for which $357.29 constituted the purchase price, was sold and delivered to Glenn & Hamilton.

These trial judges could have found from the testimony that Glenn & Hamilton made arrangements with the then corporation to purchase from it some twenty to thirty thousand feet of lumber, to be delivered at different times as they needed and sent for it; that the foreman of defendants would telephone the office of the corporation as to the amount and sizes of lumber Glenn & Hamilton needed at different dates, and that their servant, John Fluker, driving their truck, went for the lumber; that as it was loaded onto the truck, a delivery ticket was made out in duplicate by Miller Lumber Company, showing dimensions and number of feet of each

load, one ticket being given the driver and the other being retained by the seller, said driver signing both tickets; that this lumber was delivered by Fluker to Glenn & Hamilton with the duplicate tickets. Fluker testified positively that, as such servant of Glenn & Hamilton, this was the method under which he received the lumber constituting said two items, with the delivery tickets therefor, and he delivered both the lumber and the tickets to his employers. The doubt cast upon this transaction grows out of the following circumstances: It was the custom of Miller to later make out invoices from these delivery tickets and mail such invoices to the purchasers. As to the two items in question this was not done until September although the delivery tickets, containing the signature of Fluker, are dated April 14th and 15th previously. However, the evidence explains that this was an oversight; that Jack Burt made an audit of the books of Miller Lumber Company, beginning about September 1st, and that he discovered these two delivery tickets but could not find that invoices, based thereon, had been mailed out, as was the custom of Miller. Burt called attention to that fact and the invoices were mailed September 20th.

For the defendants Mr. Paul Leonard testified that at the time these two items were supposed to have been purchased he was the foreman for Glenn & Hamilton and at the time of trial he was the foreman for Hamilton, who had succeeded the partnership; that Fluker was an employee of Glenn & Hamilton when the transactions in question occurred, driving the truck and receiving lumber from Miller and delivering it and the tickets therefor to Glenn & Hamilton, as Fluker had testified. He said that all tickets that were delivered to him he turned into the office of Glenn & Hamilton; that he had no independent recollection about the delivery of the lumber constituting the items in dispute.

Mr. Herbert Slay, an accountant, testified that the partnership of Glenn & Hamilton was dissolved about

May 31, 1949, and that he audited the books upon such dissolution and that the books showed Glenn & Hamilton indebted to Miller on May 31st in the amount of $4,819.77; that on June 2nd he sent out a form letter to the creditors of Glenn & Hamilton, asking each creditor to return the letter, indicating thereon the amount Glenn & Hamilton owed each such creditor; that Miller returned the letter giving the amount owing Miller as $4,944.89, which did not then include the two items in dispute. While it is not positively and specifically so stated, we think the inference might be drawn from the testimony of Leonard and Slay that no delivery tickets for the two items in dispute were found in the possession of Glenn & Hamilton—at least, so far as these two witnesses knew. We have above mentioned the testimony explaining the reason given by Miller for the delay in mailing the invoices to Glenn & Hamilton, which also explains why the two amounts in controversy were not included within the $4,944.89.

From this it is evident, we think, we have no ground for reversing the finding of the trial court that this lumber was purchased by and delivered to Glenn & Hamilton.

It is next contended that the Millers are estopped from asserting against appellant Hamilton claim for the two disputed items. It is said Miller, in response to the letter from the auditor of June 2nd, gave the amount owing it and that such amount did not include the $357.29, and that the partnership of Glenn & Hamilton was dissolved on the basis of the reported amount being accurate. We do not think the contention is well taken for these, among other possible, reasons: First, it is not definite that Hamilton, in his negotiations with Glenn for dissolution, acted upon the assumption that the amount reported by Miller in that letter was the correct amount owing Miller. Hamilton testified Miller came to see him endeavoring to collect the amount owing Miller. This was during the process of dissolution of the part-

nership. He was asked if it was after this conversation that the auditor sent out the letter of June 2nd. He replied, ''It was about that time, but I don't know whether it was prior to this conversation or after.'' And in the second place, it is not shown that Hamilton acted to his detriment upon the assumption his firm only owed Miller the amount reported by Miller in that letter. Hamilton was already liable to Miller for the full amount owing by his partnership to Miller. His liability for the partnership debt, as between him and Miller, was the same before as after the dissolution of the partnership.

 It is next contended that the letter of June 2nd, with the amount stated by Miller to be owing, constituted an account stated between the parties. This, as stated, did not include the items in dispute. Slay, who made the audit for Glenn & Hamilton, testified that the amount reported by Miller, $4,944.89, was $25.12 greater than the amount shown by the books of Glenn & Hamilton to be owing Miller, and that on receipt of Miller's reply, he made the necessary changes in the books of the partnership to correspond with the amount reported by Miller. ''An account stated may be defined, broadly, as an agreement between the parties to an account based upon prior transactions between them, with respect to the correctness of the separate items composing the account, and the balance, if any, in favor of the one or the other. . . . There is a distinction between an account stated and a settled account, in that an account stated properly exists only where accounts have been examined and the balance admitted as the true balance between the parties, without having been paid.'' 1 Am. Jur., pg. 272, Sec. 16. It is not shown here that either Miller or Hamilton, in the conversation referred to above, or when the letter of June 2nd was returned, had in mind any disparity of claims as to the amount owing, or that any difference existed. Certainly they did not go over the account and reach an agreement as to the amount owing. There was no examination by them of the items, no striking of a

balance, no agreement as to the balance owing. And had there been such agreement the amount stated could have been opened for mutual mistake under the circumstances here shown. 1 Am. Jur., pg. 286, Sec. 31.

Affirmed.

*Lee, Kyle, Arrington* and *Ethridge, JJ.,* concur.