United States Court of Appeals,

Fifth Circuit.

No. 92-7181.

CROSTHWAIT EQUIPMENT CO., INC., et al., Plaintiffs,

Crosthwait Equipment Company, Inc., A. Curtis Crosthwait, Jr., and Ruth A. Crosthwait, Plaintiffs-Counter Defendants-Appellants, Cross Appellees,

and

Allen E. Crosthwait, Plaintiff-Appellant,

v.

JOHN DEERE COMPANY, et al., Defendants,

John Deere Company, Defendant-Counter Claimant-Appellee, Cross Appellant.

June 4, 1993.

Appeal from the United States District Court for the Northern District of Mississippi.

Before KING and EMILIO M. GARZA, Circuit Judges, and COBB[1], District Judge.

COBB, District Judge:

After a jury verdict was returned for the plaintiffs, the district court granted defendant's motion for judgment as a matter of law on the verdict and denied defendant's motion for judgment or a new trial on its counterclaim for damages. Plaintiffs appeal; defendants cross-appeal as to damages. For the reasons given below, we AFFIRM the district court's order granting defendant's motion for judgment as a matter of law, and REVERSE and REMAND for further proceedings as to damages.

I.

Allen and Ruth Crosthwait, with their son A. Curtis Crosthwait Junior, owned and operated Crosthwait Equipment Co., Inc., (collectively, Crosthwait), an authorized John Deere dealership selling agricultural and consumer products and equipment. In 1988, John Deere Company, (Deere), received information indicating that Crosthwait had prepared and submitted to Deere and its affiliate,

---

[1]District Judge of the Eastern District of Texas, sitting by designation.

Deere Credit Services, Inc., sales and credit documents containing material, false representations. In March 1990, after numerous reports of fraudulent activities, several Deere employees discussed the need to investigate Crosthwait's business practices. This resulted in a field audit of sales and credit documents prepared by Crosthwait. The audit led John Deere to terminate Crosthwait's dealership, based on fraudulent sales and credit documents, and pursuant to its dealership agreements with Crosthwait.

Crosthwait filed suit in state court for breach of contract and breach of fiduciary duty. Upon removal, the district court ordered that Crosthwait could stay in business for ninety days under Mississippi law.[2] During this period, Crosthwait amended its petition to include intentional infliction of emotional distress, alleging undue pressure to sign a closure agreement to avoid litigation; and intentional interference with prospective and existing contractual sales, in that Deere removed certain tractors that Crosthwait had or could have sold during the ninety-day period. Deere counterclaimed for damages on the account balance due.

At trial, twenty-one former customers testified without contradiction that numerous sales and credit documents bearing their names and submitted to Deere or Deere Credit Services contained falsifications regarding various transactions between the dealership and them. Crosthwait inflated down payments, incorrectly recorded purchase prices, and listed fictitious equipment as trade-ins. Uncontroverted evidence indicated that serial numbers were tampered with and in some instances exchanged from one piece of equipment to another. Allen Crosthwait himself testified that he submitted falsified sales and credit documents to Deere and its affiliate.

Crosthwait argued that such practices had long been known to Deere and, in fact, constituted standard practice in the business that was not material enough to warrant cancellation of his dealership.[3] He further claimed that Deere's audit was a sham, the actual value of financed equipment

---

[2]Miss.Code Ann. § 75-24-51(6) (1972).

[3]Crosthwait cites deposition testimony of several witnesses which claimed that no other dealership had been cancelled for those reasons, a standard form containing a box to indicate whether or not the purchase price was actually made as represented, and the testimony of several employees that they were aware that misrepresentations happened.

was sufficient to provide Deere Credit complete security despite misrepresentations of value, and Deere's action in cancelling its dealership was actually in retaliation for selling outside his designated sales area.

After a jury returned a verdict in favor of Crosthwait, the district court granted Deere's motion for judgment as a matter of law as to these claims, but denied its motion for judgment as a matter of law or a new trial on Deere's counterclaim.

## II.

Crosthwait contends on appeal that, under Mississippi law, there was insufficient evidence showing deliberate misrepresentation of material facts and actual damages; and there was sufficient evidence of improper motive on Deere's part in terminating the dealership to constitute an affirmative defense to fraud.

We use the same standard of review that guided the trial court in its ruling for judgment as a matter of law. *Normand v. Research Institute of America, Inc.,* 927 F.2d 857, 859 (5th Cir.1991) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc)). All the evidence with all reasonable inferences is considered in the light most favorable to the party opposed to the motion. If the facts and the inferences point so strongly and overwhelmingly in favor of one party that we believe reasonable jurors could not arrive at a contrary verdict, then the motion was properly granted. If there is substantial evidence opposed to the motion—that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might reach different conclusions—then the motion should have been denied. *Id.*

## A.

To prove fraud under Mississippi law, Deere has the burden of showing by clear and convincing evidence that Crosthwait:

1. knowingly made;

2. false;

3. material;

4. misrepresentations to Deere or Deere Credit;

5. which Crosthwait intended to induce action on the part of Deere or Deere Credit in the manner reasonably contemplated;

6. that Deere or Deere Credit did not know the falsity of Crosthwait's representations;

7. that Deere or Deere Credit relied upon the truth of the representations;

8. that it had the right to do so; and

9. that it suffered consequent and proximate injury.

*See Vogel v. American Warranty Home Services Corp.,* 695 F.2d 877 (5th Cir.1983); *Beck Enterprises, Inc. v. Hester,* 512 So.2d 672, 675 (Miss.1987).

The record below provides overwhelming evidence that the sales and credit documents prepared by Crosthwait on its customers' behalf for submission to Deere contained false information which the customers did not supply or create, which were deliberate and material and upon which Deere detrimentally relied.

Crosthwait customers needed favorable financial data before Deere Credit Services would approve the credit they needed to finance purchases. This credit allowed Crosthwait to sell its equipment to customers; and, in turn, a portion of the credit funds would be released to Crosthwait as an incentive to place a borrower with Deere Credit Services.

Allen Crosthwait admitted he personally submitted documents to Deere which he knew contained false information. Because Deere relied on these misrepresentations in the course of their sales and credit transactions, these misrepresentations were material. Mr. Al Berzett, manager of Agricultural Finance for Deere Credit Services, testified that the credit information, as supplied by the dealers, helped Deere Credit Services determine whether it would give credit for the purchase. Thus, when the dealer gives this information, it intends to induce reliance and a particular action on the part of Deere and Deere Credit as a consequence of these misrepresentations. Since these representations were false, Deere Credit was not in a position to make an informed decision as to the credit-worthiness of its applications, and was therefore ignorant of the applicants' true credit worthiness. The trial court found that, as a result of these misrepresentations, Deere suffered at least $2000 in damages; and, were it not for the honesty of Crosthwait's customers, would have suffered more.

Deere cancelled Crosthwait's dealership under the terms of its agreements with Crosthwait. The "John Deere Agricultural Dealer Agreement" (Agricultural Agreement) and the "John Deere Consumer Products Dealer Agreement" (Consumer Agreement) gave Deere the right to cancel its dealership appointment with Crosthwait by giving notice "at any time" upon default by Crosthwait, defined, *inter alia,* as "[t]he falsification of records, contracts reports or any other documents which the Dealer has submitted to the Company, its affiliates or assignees". Consumer Agreement §§ 3(c), 10(a); Agricultural Agreement, § 2(d).

The terms of the agreements are clear and unambiguous. As the trial court properly gave the language of the agreements its plain meaning and construction, *Continental Cas. Co. v. Hester,* 360 So.2d 695, 696 (Miss.1978), it correctly concluded that Deere lawfully ended Crosthwait's dealership.

B.

At oral argument, Crosthwait introduced the novel idea that "bad faith" on the part of Deere in terminating Crosthwait's dealership constituted an affirmative defense under Mississippi law. This argument is predicated on a showing that Deere cancelled Crosthwait's dealership in retaliation for its selling outside its designated area. The trial court found that the evidence offered, a notation by a Deere employee on an inter-office memo, was not enough to raise a jury issue under the standard set in *Boeing, supra.* Applying the same standard, we agree.

III.

Having held that the trial court was correct in finding that Deere lawfully terminated Crosthwait's dealership pursuant to its contract under Mississippi law, it follows that Crosthwait is not entitled under that law to an award for emotional distress, *Fuselier, Ott and McKee, P.A. v. Moeller,* 507 So.2d 63, 69 (Miss.1987) (contractual right to terminate precludes award absent malice); or for intentional interference with new and used sales, *Johnson v. Warnaco, Inc.,* 426 F.Supp. 44, 47 (S.D.Miss.1976) (exercise of "privileged" right interfering with contract is not wrongful).

IV.

Crosthwait claims that, as Deere terminated its dealership without notice, it was entitled to

damages under the Mississippi Franchise Cancellation Statute. Miss.Code Ann. § 75-24-51(6) (1972). While it is arguable that John Deere and Crosthwait qualify as franchisor/franchisee under the statute,[4] ninety-day notice prior to termination is not required when fraud is the basis of termination.[5]

The evidence is clear in showing that Crosthwait was terminated by Deere for having submitted fraudulent sales and credit contracts to Deere and Deere Credit. In addition, Crosthwait was allowed by the trial court, in deference to Mississippi law, to continue its day-to-day operations for ninety days after it was notified by Deere that it was being terminated as a dealer. In sum, even if the relationship between the parties was that of franchisor/franchisee, Deere did not violate the ninety-day statute.

V.

We agree with Deere that the trial court incorrectly denied its motion for judgment as a matter of law or a new trial as to Crosthwait's liability to Deere for actual damages, attorney's fees, and costs.

Disputes relative to the specific amounts that may be owed to Deere, noted by the court below, do not negate uncontradicted evidence of losses sustained. Ruth Crosthwait, Crosthwait's bookkeeper, testified that Crosthwait received a statement in 1990 indicating that it owed Deere $624,914, but that she unilaterally decided not to pay. This debt is undisputed and falls within

---

[4] " 'Franchise' means an arrangement for a definite or indefinite period, in which a person for a consideration grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise." Miss.Code Ann. § 75-24-51(6) (1972). Consideration is the only element in the definition of "franchise" that may not be clearly met. Mississippi does not necessarily require any sort of "payments" as consideration for a franchise. Some commentators indicate that any good consideration is equivalent to a "franchise fee" under Mississippi law. Kenneth H. Slade, *Applicability of Franchise and Business Opportunity Laws to Distribution and Licensing Agreements,* 15 Am.Intell.Prop.L.J. 1 (1987).

[5] "No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination, or failure to renew in writing at least ninety (90) days in advance of the cancellation, termination, or failure to renew, except that when ... fraud ... of the franchise ... is the basis of grounds of cancellation or termination, the ninety-day notice shall not be required." Miss.Code Ann. § 74-24-53 (1972).

Mississippi's definition of "account stated." *Hamilton v. Miller,* 217 Miss. 316, 64 So.2d 147, 149 (1953).[6]

Since the trial court did not distinguish between disputed and undisputed debts, and as specific amounts constitute a question of fact, we REVERSE and REMAND this portion of the case for a reconsideration of the debts owed to Deere.

The action of the district court in granting judgment for Deere is AFFIRMED; the action of the district court in failing to grant Deere judgment as a matter of law on its counterclaim for Crosthwait's liability is REVERSED and the issue is REMANDED for trial.

---

[6]"An account stated may be defined, broadly, as an agreement between the parties to an account based upon prior transactions between them, with respect to the correctness of the separate items composing the account, and the balance, if any, in favor of one or the other.... [A]n account stated properly exists only where accounts have been examined and the balance admitted as the true balance between the parties."