United States Court of Appeals,

Fifth Circuit.

No. 91-6193.

ALLIED BANK-WEST, N.A., and First Interstate Bank of Texas, N.A., Plaintiffs-Appellants,

v.

Russell STEIN, Defendant,

Merrill Lynch, Pierce, Fenner & Smith, Inc., Defendants-Appellees.

July 28, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Allied Bank-West sought damages from Merrill Lynch for failing to honor its commitment to replace pledged securities. After trial, the jury returned a verdict in favor of Allied Bank. The district court then entered a judgment notwithstanding the verdict in favor of Merrill Lynch. Because Merrill Lynch did not argue or present evidence to support the defense on which the court granted JNOV, we vacate the court's entry of JNOV with instructions to reinstate the judgment on the jury's verdict. We also vacate the district court's alternative grant of a new trial.

I.

In 1982, Allied Bank-West[1] (Allied) agreed to consolidate several loans other banks had made to George Bolin (Bolin) and his related companies. Allied consolidated the loans into two loans in the amounts of $1,600,000 and $2,825,000. In 1983, Bolin gave Allied a third note for an additional sum of $800,000. Thus, when Bolin executed this note his total principal debt on the three notes was over $5,000,000. Bolin, his mother, and his father's estate owned over 119,000 shares of Halliburton stock, which he pledged to secure this debt.

In 1981 and 1982, the value of the Halliburton stock rapidly declined. Bolin discussed the

---

[1]In 1986, the bank's name changed from Allied Bank West Loop to Allied Bank-West. Allied was succeeded in interest by First Interstate Bank of Texas in 1988.

declining value of the Halliburton stock with Wayne Lapham (Lapham), the President of Allied, and with Russell Stein (Stein), a stockbroker at Merrill Lynch. The parties agreed to set up three accounts at Merrill Lynch, one in each of the stock owners' names, to diversify the stock portfolio Allied held as collateral on its loans to Bolin. To carry out this diversification plan, the parties agreed to sell the declining Halliburton stock and purchase in exchange stock they hoped would outperform the Halliburton stock. From 1982 until July 25, 1984, two documents confirmed each transaction: a directive letter and a letter of guaranty. George Bolin or his mother, Madaline Bolin, would sign a directive letter directing Merrill Lynch to sell certain shares of Halliburton stock and purchase other stock. Merrill Lynch would send a reply letter to Allied, requesting that Allied furnish Merrill Lynch with a designated number of shares of pledged Halliburton stock. In that "guaranty" letter, Merrill Lynch agreed to return to Allied, from the Bolin account, replacement shares of a specified stock of approximately the same value as the Halliburton stock that was sold.

Because the transactions between the parties became numerous, the parties implemented a more streamlined procedure in July 1984. The parties drafted two letters describing this procedure. In a July '84 letter, Karen Nesbitt Moffatt (Moffatt) of Allied informed Merrill Lynch that the bank would release to Merrill Lynch the remaining stock that it held as collateral on Bolin's loans. Ms. Moffatt added, however, that "all assets or proceeds thereof relative to [Bolin's collateral stock] are to be released directly and exclusively to Allied West Loop." Stein, Merrill Lynch's broker, signed this letter in acceptance. The next day George Bolin wrote a letter to Allied, authorizing Allied to release Bolin's collateral securities to Merrill Lynch "for safekeeping," and agreed that "all proceeds from the sale of said securities will go directly to Allied."

Allied presented evidence that Merrill Lynch violated the letter and the spirit of the guaranty agreements before July 1984 in the following instances:

> (1) After issuing twenty-seven letters of guaranty, Merrill Lynch failed to deliver the designated substitute collateral that was promised in ten of the letters of guaranty. Merrill Lynch sometimes purchased a different stock than was listed in the letter of guaranty or failed altogether to deliver the replacement stock to Allied.

> (2) Allied on several occasions delivered more shares of the Halliburton stock than Merrill Lynch requested, because of the particular denominations of the stock. Allied complained that Merrill Lynch failed to return or furnish substitute stock for over 9,000 shares of this

over-delivered stock.

(3) Allied did not know or approve of Merrill Lynch's practice of allowing Bolin to use his securities accounts as margin accounts. Under this scheme, Merrill Lynch gave Bolin a line of credit for stock transactions. Bolin in turn pledged his stock to Merrill Lynch to secure this line of credit. Bolin already had pledged some of this stock to Allied. As a result of Bolin's margin trading, the Bolins' accounts incurred a margin interest indebtedness of $200,000.

(4) Merrill Lynch allowed the Bolins to make cash withdrawals of over $1,800,000 from the margin accounts.

In April 1985, Bolin defaulted on his loans. Allied ordered Merrill Lynch to sell the remaining collateral stock, but the stock yielded less than $2,000,000. Merrill Lynch received all the money it was owed, including $400,000 in commissions, before Allied received its proceeds. Estimates of damages to Allied ranged from $1,900,000 to over $3,000,000. Both Bolin and Stein declared personal bankruptcy.

Allied sued Stein and Merrill Lynch under a number of theories including common law and statutory fraud, conversion, breach of contract, and breach of fiduciary duty. Allied argued generally that Merrill Lynch breached contractual or fiduciary duties Merrill Lynch owed to Allied to remit the substitute stock purchased with the proceeds of the sale of the Halliburton stock. After the case was submitted to the jury by special interrogatories, the jury returned a verdict for Allied on all theories. Specifically, the jury found that Merrill Lynch knowingly made misrepresentations and false promises that proximately caused damage to Allied; knowingly converted the property of Allied; knowingly breached numerous contracts with Allied; knowingly breached fiduciary duties that it owed to Allied; and caused Allied to incur damages of $2,315,982.02.

At the close of all the evidence, Merrill Lynch filed a motion for directed verdict. During argument of the motion, the court suggested that the motion should be granted for a reason not urged by Merrill Lynch. The court suggested that because Bolin was Allied's agent and Bolin authorized Merrill Lynch's conduct, Allied's claims against Merrill Lynch had no merit. But the court denied the motion for directed verdict and submitted the case to the jury because it believed that "people sitting listening to this probably would have a different opinion." The court suggested, however, that it might grant a JNOV.

After the jury returned its verdict in favor of Allied, the court entered a Judgment

Notwithstanding the Verdict (JNOV) based on the theory that Bolin acted as agent of Allied, and that this agency "foreclosed the possibility of any successful litigation by Allied." The court entered a take nothing judgment against Allied. The court also conditionally granted a motion for new trial in the event its JNOV was reversed. Allied timely appealed.

## II.

Allied challenges first the district court's entry of a JNOV and a take-nothing judgment. Allied generally contends that the court erred in granting a JNOV on an issue that Merrill Lynch did not adequately raise pretrial or present evidence on at trial.

We first summarize the parties' trial theories. Allied conceded that it authorized Bolin to select substitute stocks for the existing portfolio. It contended, however, that Bolin and Merrill Lynch breached their duty to deliver to Allied all substitute shares purchased with proceeds from the sale of the original pledged stock. Merrill Lynch's theory was that Bolin, not Allied, was its customer, and that it took its instructions solely from Bolin. Merrill Lynch argued that Allied relinquished whatever interest it had in the stock and gave Bolin full, unrestricted authority to deal with the stock. Based on these facts, Merrill Lynch argued that it owed no legal duty to protect Allied's interest in the pledged stock.

We have carefully reviewed the pretrial pleadings and briefs that Merrill Lynch filed in the district court with the view of determining whether and the extent to which Merrill Lynch raised the agency issue which formed the basis of the JNOV. Merrill Lynch did assert that Allied delegated authority to Bolin to deal with the stock. Although this allegation provides few details regarding the existence or scope of Bolin's agency, it may well have been adequate to support the introduction of evidence at trial designed to prove Bolin's agency. But pretrial pleadings are of secondary importance in reviewing the propriety of a judgment and JNOV following a full trial. Following trial we look primarily at the evidence presented at trial and the contentions of the parties at trial in evaluating the propriety of the JNOV.

In determining whether the JNOV was proper, our inquiry consists of both substantive and procedural components. Substantively, we consider whether the record evidence supports the

defensive theory; procedurally, we must determine whether Merrill Lynch took the procedural steps necessary to preserve this defense.

Substantively, we review a district court's decision to grant a JNOV under the standard of *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc). In so doing, we view the evidence in the light most favorable to the party opposing the motion, and sustain the JNOV "only if we find that on all the evidence no reasonable juror could arrive at a verdict contrary to the district court's conclusion." *Ellison v. Conoco, Inc.,* 950 F.2d 1196, 1203 (5th Cir.1992) (citing *Boeing,* 411 F.2d at 374-75), cert. denied, 61 U.S.L.W. 3852, --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 1993 WL 97493 (U.S. June 21, 1993) (No. 92-8122). The district court's JNOV does not meet this heavy burden.

The evidence is uncontradicted that Allied authorized Bolin to select the replacement stock. But, more to the point, the evidence was overwhelming that Allied directed both Bolin and Merrill Lynch to deliver the replacement stock back to Allied, free of any encumbrances. In the face of the written instruments and other evidence establishing this fact, the district court necessarily concluded to the contrary: that Allied gave Bolin actual or apparent authority to deal with the replacement stock and other proceeds of the sale of the Halliburton stock as he saw fit. Although we need not decide whether the record would support a jury finding that Allied gave Bolin actual or apparent authority to deal with the replacement stock as he saw fit, we have serious doubts that the evidence is sufficient even for this purpose. It is perfectly clear, however, that reasonable jurors could have concluded from the evidence that Allied did not give Bolin actual or apparent authority to do anything with the replacement stock but return it to Allied.[2] The JNOV therefore can not stand.

Merrill Lynch also failed to take any of the usual procedural steps to preserve the agency defense. Merrill Lynch did not move for a directed verdict on the defense, ask for jury instructions

---

[2]Merrill Lynch apparently did not think enough of the agency defense to argue it to the jury. In its closing Merrill Lynch argued that its duties and obligations ran solely to Bolin as its customer and that it promised to deliver the replacement stock back to Allied only in accordance with Bolin's instructions. Merrill Lynch could have argued at trial that Allied gave Bolin discretion to retain or return the replacement stock and that this defeated Allied's claims against Merrill Lynch. But Merrill Lynch did not make this argument.

on the defense, or ask for a special interrogatory on the defense.

First, Merrill Lynch failed to raise the agency defense in its directed verdict motion. Because Fed.R.Civ.P. 50(b)[3] provides that a motion for JNOV is a renewal of a motion for directed verdict, a district court may not review a motion for JNOV unless the movant has first sought a directed verdict. See *Miller v. Rowan Cos.,* 815 F.2d 1021, 1024 (5th Cir.1987). The motion for directed verdict is therefore "a prerequisite" and is "virtually jurisdictional." *Perricone v. Kansas City S. Ry. Co.,* 704 F.2d 1376, 1380 (5th Cir.1983). It follows that the motion for JNOV "cannot assert a ground that was not included in the motion for directed verdict." *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 172 (5th Cir.1985) (citations omitted); see also *Hinojosa v. City of Terrell, Tex.,* 834 F.2d 1223, 1228 (5th Cir.1988) (motion for JNOV must be based on ground included in prior motion for directed verdict), cert. denied, 493 U.S. 822, 110 S.Ct. 80, 107 L.Ed.2d 46 (1989); *Sulmeyer v. Coca Cola Co.,* 515 F.2d 835, 846 n. 17 (5th Cir.1975) ("It would be a constitutionally impermissible re-examination of the jury's verdict for the district court to enter judgment n.o.v. on a ground not raised in the motion for directed verdict."), cert. denied, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976).

Although Merrill Lynch moved for directed verdict, it did not include the ground upon which the court granted JNOV—Bolin's authority as Allied's agent to retain the proceeds of the sale of the Halliburton stock. Merrill Lynch argued in its motion for directed verdict that it had disclosed all material information to Bolin; that it owed no duty to Allied, who was not its customer; that it relied on Bolin's actual and apparent authority to control the trading; and that Allied released any security interest it had in the stock when it relinquished the stock to the custody and control of Bolin. Merrill Lynch's motion was therefore predicated on the theory that Allied was a stranger to the transaction, not that Allied's agent Bolin had plenary authority to act for Allied.

Finally, Merrill Lynch failed to request a jury charge or special interrogatory on the agency defense. Fed.R.Civ.P. 49(a) provides that if an issue that is raised by the pleadings or by the evidence

[3]Fed.R.Civ.P. 50 as amended, effective December 31, 1991, replaces motions for directed verdict and JNOV with a single type of motion for judgment as a matter of law. We use the original version of the rule, as it was effective at the time of trial.

is omitted from a special verdict form, a party must demand that the issue be submitted to the jury or else waive a right to a trial by jury on the issue. Even if the issue was raised by the pleadings or by the evidence, Merrill Lynch waived jury trial on the issue by failing to request a special interrogatory on Bolin's agency. *See Molex, Inc. v. Nolen,* 759 F.2d 474, 478 (5th Cir.1985).

For all of the above reasons, we must vacate the JNOV.

## III.

Having concluded that the court was in error on its entry of the JNOV, we now turn to the court's conditional granting of a new trial. We review the court's grant or denial of a new trial for abuse of discretion. *Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 619 (5th Cir.1988). But we exercise broad review of a court's grant of a new trial "because of our respect for the jury as an institution and our concern that the party who persuaded the jury should not be stripped unfairly of a favorable decision." *Id.* The court stated that it granted the new trial because it "failed and refused to submit the agency issue to the jury."

We agree with Allied that the district court can not be faulted for not submitting this issue to the jury—Merrill Lynch did not give the parties or the court adequate notice of the defense. See *Cunningham v. Healthco, Inc.,* 824 F.2d 1448, 1458 (5th Cir.1987) (defenses not raised at trial are waived). Merrill Lynch had ample opportunity to present evidence on this defense, to argue the defense at trial, and to ask the court to submit a special interrogatory to the jury. Merrill Lynch failed to do any of this. Even after the court specifically suggested the agency defense during argument on Merrill Lynch's motion for directed verdict, Merrill Lynch did not argue this defense to the jury. It maintained its original trial theory and was content to rest its case on that theory. It was only after the jury returned its adverse verdict that Merrill Lynch adjusted its theory of the case to incorporate the agency theory that the court suggested.

Motions for new trial "cannot be used to argue a case under a new legal theory." *Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990) (citing *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986)); *see also* 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2805, at 39-40 (1973) (no new trial on grounds not raised during first trial unless

error is so fundamental it results in "gross injustice").

Merrill Lynch has offered no acceptable reason for permitting it to retry this case on its new theory.  We therefore vacate the court's order of a new trial.

IV.

For reasons stated above, we VACATE the court's entry of JNOV and REMAND the case with instructions for the court to reinstate its original judgment on the jury verdict.  We also VACATE the court's conditional grant of a new trial.

VACATED and REMANDED.