**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 95-11051.

Teddy GUTIERREZ, Plaintiff,

and

Pamela Calderon;  Maria de la Cruz, Plaintiffs-Appellants,

v.

EXCEL CORPORATION, et al., Defendants,

Excel Corporation, Defendant-Appellee.

Frances PONCE, Plaintiff-Appellant,

v.

EXCEL CORPORATION, Defendant-Appellee.

March 5, 1997.

Appeal from the United States District Court for the Northern
District of Texas.

Before POLITZ, Chief Judge, and SMITH and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants Maria de la Cruz, Frances Ponce, and Pamela
Calderon sued their employer, Excel Corporation, for injuries they
allegedly suffered while working at Excel's meatpacking plant.[1]

---

[1]Appellants were members of a group of ten plaintiffs who
sued Excel for negligence.  The ten plaintiffs were split into
groups of two and three for trial, and de la Cruz, Ponce, and
Calderon constituted the final such group to go to trial.  The
juries absolved Excel of negligence as to six of the first seven
plaintiffs, but one of the plaintiffs received a jury verdict in
her favor.  The district court in that case, however, granted
Excel's renewed motion for judgment as a matter of law, which we
then reversed in an unpublished opinion.  *Gutierrez v. Excel
Corp.,* 78 F.3d 581 (5th Cir.1996) (table).

Jurisdiction was based upon diversity of citizenship. The jury returned a verdict for de la Cruz and Ponce but found no negligence on the part of Excel as to Calderon. Thereafter, the district court granted Excel's renewed motion for judgment as a matter of law and alternatively, Excel's motion for a new trial regarding de la Cruz and Ponce. The district court denied Calderon's motion for a new trial. We affirm the judgment against de la Cruz; reverse the judgment as a matter of law but affirm the order granting Excel a new trial as to Ponce; and affirm the order denying Calderon a new trial.

BACKGROUND

Appellants worked in Excel's Texas meatpacking plant at the "Whizard table," so named because of the "Whizard" knives that the workers use to remove meat from bones that arrive via conveyer belt. The Whizard knife is an electric knife, cylindrical in shape (similar to a flashlight handle) with a rotating blade at one end and a power cord at the other end. Appellants assert that they suffer from various forms of cumulative trauma disorder ("CTD") resulting from their use of the Whizard knives.

Cumulative trauma disorders are characterized as "wear and tear" on the tissue surrounding joints, ligaments, and tendons. Cumulative trauma disorder refers not to one specific injury, but to numerous disorders caused by the performance of repetitive work over a long period of time. Injuries that may be classified as CTDs include, but are not limited to, carpal tunnel syndrome in the wrist, rotator cuff tendinitis in the shoulder, and nerve compression. While CTDs are generally not caused by any one

specific traumatic event, there are certain risk factors associated with cumulative trauma, including repetition, force, vibration, cold, and posture.

The Occupational Safety and Health Administration ("OSHA") has recognized the prevalence of cumulative trauma disorders in meatpacking plants, and has published guidelines offering suggestions on how to minimize the risk factors associated with CTDs. Specific recommendations include increasing the number of workers performing a task, designing jobs to allow self-pacing when feasible, implementing job rotation, and designing jobs to allow sufficient rest pauses. The guidelines also emphasize the need for medical management and proper training of the workers.

Appellants sued Excel, alleging that it negligently failed to implement sufficient safety measures in connection with their use of the Whizard knives.[2] Appellants' theory at trial was that Excel was aware of the high injury rates occurring at the Whizard table, that Excel knew of the high risk factors for cumulative trauma disorder associated with the use of the Whizard knives, and that Excel did little to lessen these high risk factors, despite OSHA recommendations and the suggestions of Excel's own outside consultant.[3] In support of these contentions, Appellants presented documents both describing cumulative trauma disorder and providing recommendations designed to help meatpacking plants mitigate the

---

[2]Appellants also sued Bettcher Industries, the Whizard knife manufacturer, but those claims were settled prior to trial.

[3]Excel is a nonsubscriber to the Texas worker's compensation system and is therefore subject to common-law causes of action such as negligence. *See* Tex. Labor Code § 406.033.

risk factors associated with it; testimony regarding the working conditions at Excel; and the medical records of the doctors who examined Appellants.

The jury returned a verdict for de la Cruz and Ponce, awarding them $350,000 and $275,000 in damages, respectively, but found that Calderon had not been injured in the course of her employment with Excel. Thereafter, Excel moved for both judgment as a matter of law and in the alternative, a new trial as to de la Cruz and Ponce. Calderon also moved for a new trial. The district court first granted Excel's motion for judgment as a matter of law, finding that de la Cruz and Ponce did not prove that any act or omission on the part of Excel was the proximate cause of their alleged injuries. The court then granted Excel's motion for a new trial, conditioning its decision upon this Court's reversal of the order granting Excel judgment as a matter of law. The court denied Calderon's motion for a new trial. All three Appellants appealed.

DISCUSSION

*I. Standards of Review*

*A. Judgment as a Matter of Law*

The standard of review on appeal of a judgment as a matter of law is the same as that used by the trial court in considering the motion. *Crosthwait Equipment Co., Inc. v. John Deere Co.,* 992 F.2d 525, 528 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 549, 126 L.Ed.2d 451 (1993). All evidence with all reasonable inferences must be considered in the light most favorable to the nonmoving party. *Id.; Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc). We affirm the judgment if the facts and

inferences point so strongly and overwhelmingly in favor of one party that no reasonable juror could arrive at a verdict contrary to the district court's conclusion. *Crosthwait,* 992 F.2d at 528. If, however, there is substantial evidence opposed to the motion such that reasonable jurors might reach different conclusions, then the motion should have been denied. *Id.*

*B. New Trial*

We review the district court's grant or denial of a new trial for abuse of discretion. *Allied Bank-West, N.A. v. Stein,* 996 F.2d 111, 115 (5th Cir.1993). The standard of review is somewhat narrower when a new trial is denied and somewhat broader when a new trial is granted. *Jones v. Wal-Mart Stores, Inc.,* 870 F.2d 982, 986 (5th Cir.1989). "[W]e exercise broad review of a court's grant of a new trial because of our respect for the jury as an institution and our concern that the party who persuaded the jury should not be stripped unfairly of a favorable decision." *Allied,* 996 F.2d at 115 (internal quotations omitted).

*II. Negligence Under Texas Law*

Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury. *Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993) (applying Texas law), *cert. denied,* 510 U.S. 1178, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994).

The key issue in this case is causation. Excel argues that it is entitled to judgment as a matter of law because de la Cruz,

Ponce, and Calderon did not establish that their respective injuries were proximately caused by their use of the Whizard knife. In Texas, proximate cause has two factors: cause in fact and foreseeability. *Id.* "Cause in fact is "but for cause,' meaning the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 313 (Tex.1987). Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligence created. *Id.* These two elements must be established by probative evidence, not by mere conjecture or guess. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). Both of these factors, however, may be established by direct or circumstantial evidence. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980). Causation is a question of fact for the jury, and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event. *J.K. and Susie L. Wadley Research Inst. and Blood Bank v. Beeson,* 835 S.W.2d 689, 698 (Tex.App.—Dallas 1992, writ denied); *Figure World, Inc. v. Farley,* 680 S.W.2d 33, 36 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Although Excel asserts that Appellants proved neither cause in fact nor foreseeability, their primary argument is that Appellants failed to prove that the use of the Whizard knife at Excel was the cause in fact of their injuries.

*III. The Evidence*

The direct evidence regarding causation in this case is minimal. Appellants did not present the live testimony of any of

the doctors who examined them, nor did they offer any expert evidence regarding the causation of cumulative trauma disorders. Instead, they attempted to prove causation by circumstantial evidence. First, they presented testimony showing that the conditions at the Whizard table were fraught with risk factors associated with cumulative trauma disorder and that Excel failed to mitigate such risks. Second, they introduced into evidence the medical records of the doctors who examined them.

*A. Risk Factors Associated with Cumulative Trauma Disorder*

As noted previously, risk factors associated with cumulative trauma disorder include repetition, force, vibration, cold, and posture. There is little dispute that work at the Whizard table was extremely repetitive and that Appellants were given little chance to take rest breaks. They each worked a nine-hour shift, and during each shift they were allowed only one 15-minute break during the first part of the shift, one 30-minute break for lunch, and no breaks during the last three hours of the shift. Although witnesses for Excel asserted that Appellants were free to take short rest breaks between the trimming of each bone, Appellants testified that their supervisors at the Whizard table threatened them with disciplinary action if they tried to rest their hands. Because Excel also required Appellants to remove from the bones an average of 40 pounds of meat per hour, it was difficult for Appellants to find the time to rest their hands.

Appellants also testified that they experienced significant vibrations when using the Whizard knives, which were often dull and frequently overheated. Further, they testified that because of the

vibrations, they had to grip the knives tightly in order to keep them from spinning in their hands. Although witnesses for Excel testified that Appellants were responsible for the maintenance of their own knives while working, Appellants claimed that Excel never properly trained them to sharpen or straighten the blades. In addition, Appellants testified that they were never formally trained on how to properly use the Whizard knives. Although each of the Appellants signed safety and training forms indicating that they had in fact been properly trained, they testified their supervisors instructed them to put down the "correct" answers. Further, they claimed that they were afraid to report their injuries for fear of getting fired.

Viewing the aforementioned testimony in the light most favorable to Appellants, as we must in an appeal from a judgment as a matter of law, *Crosthwait,* 992 F.2d at 528, it is apparent that the working situation at the Whizard table was rife with conditions known to cause, or at least to be associated with, cumulative trauma disorder. This evidence alone, however, is insufficient to establish cause in fact under Texas negligence law. *See Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 165 (Tex.App.—Waco 1995, no writ) (stating that "[c]ause in fact is not shown if the defendant's conduct did no more than furnish a condition which made the injury possible"). To establish causation, Appellants must prove that the conduct of Excel "caused an event and that this event caused" Appellants to suffer injuries. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). The evidence in this case establishes merely that Excel caused an event, *viz.,* the

working conditions at the Whizard table that were replete with risk factors associated with CTD. These conditions *may* have caused injury. Appellants must show, however, that Excel *did* in fact cause their injuries. For this, they rely upon their medical records.

*B. The Medical Records*

*1. Maria de la Cruz*

In December 1992, Maria de la Cruz was working at the Whizard table when she reached out with her right hand to grab a bone from the conveyer belt. As she did, she felt something "pop" in her right wrist.[4] Shortly thereafter, de la Cruz visited at least three doctors, seeking treatment and therapy. The records of these doctors indicate that de la Cruz suffered from a sudden injury to her right wrist.[5]

Nowhere in the medical records, however, does there appear to be a definitive diagnosis that de la Cruz's injury was a type of cumulative trauma disorder resulting from her use of the Whizard knife. The medical records indeed indicate that de la Cruz suffered injury to her right wrist, but her particular injury is not one that the evidence suggests is associated with cumulative trauma disorder. Dr. Royce C. Lewis, one of de la Cruz's examining doctors, noted in his referral letter to Dr. Tony Loggins that "I

---

[4]De la Cruz usually held the bones with her left hand because she operated the Whizard knife with her right hand. On this particular occasion, however, the bone had traveled past her, so she briefly switched the knife to her left hand and reached out with her right hand.

[5]De la Cruz also complained of pain in her elbow, arm, shoulder, and back, but there is no diagnosis of such injuries anywhere in the medical records.

really am not able to explain much from the standpoint [sic] etiology[6] of this woman's symptoms.  She does not, I think, have a compression of the median nerve in the carpal tunnel, nor does she have any other localizing signs that I can demonstrate."  Likewise, de la Cruz's third physician, Dr. Lloyd Garland, stated that tests have "not been able to conform a true carpal tunnel syndrome."  Dr. Garland did note that an MRI scan showed "a torn triangular fibrocartilage with a small amount of fluid in the intercarpal compartment," and that "there is obviously true pathology in the wrist."

This evidence shows that de la Cruz suffered an injury, but it is insufficient to establish that the repetitive work at the Whizard table was the cause in fact of de la Cruz's injuries.  De la Cruz presented no evidence suggesting that "torn triangular fibrocartilage" is an injury categorized as a cumulative trauma disorder.  According to documents introduced into evidence, carpal tunnel syndrome and nerve compression are types of CTDs. Two of the doctors, however, concluded that de la Cruz does not suffer from either of these two injuries.[7]

Although one doctor noted at one point that de la Cruz's injury is "work-related," that statement alone is not sufficient to establish causation.  An expert opinion "must rest in reasonable

---

[6]Webster's Third New International Dictionary, Unabridged, defines etiology as "a science or doctrine of causation or of the demonstration of causes."

[7]An early diagnosis contained in the records indicates that it is possible that de la Cruz may have suffered from carpal tunnel syndrome or nerve compression.  Later medical conclusions, however, more strongly suggest that she did not suffer from either of such disorders.

medical probability" to constitute evidence of causation, and "[t]his rule applies whether the opinion is expressed in testimony or in a medical record." *Burroughs,* 907 S.W.2d at 500. Reasonable probability is determined by the substance and context of the medical opinion, and it does not turn on the use of a particular term or phrase. *Id.* The "substance and context" of the medical records of all three doctors indicate that de la Cruz does not suffer from an injury associated with repetitive trauma. She may well have suffered injury at work; the fact that she was injured at work, however, does not establish that such injury is cumulative trauma caused by Excel's breach of a duty regarding the Whizard knife.

We do not suggest that all plaintiffs bringing negligence claims for cumulative trauma disorders must present medical or other expert testimony specifically stating that there is a direct causal link between a defendant's actions and a plaintiff's injury. There are certain risk factors present in the work-environment that are known to be associated with cumulative trauma disorder. Further, there are particular injuries collectively referred to as cumulative trauma disorders that are caused by a combination of these risk factors. If a plaintiff can establish that she was exposed to enough of the risk factors for a sufficiently long period of time, and that she suffers from a specific injury defined as a cumulative trauma disorder, then it is not, as a matter of law, necessary to present evidence directly stating that the work environment caused the injury. A reasonable jury could infer causation in these circumstances.

But de la Cruz did not present such testimony in this case. Although she established that she was exposed to many risk factors during the period in which she operated the Whizard knife, her injury is not one associated with cumulative trauma. Furthermore, there is no evidence that cumulative trauma manifests itself in a sudden, sharp manner, as was the case here. The mere fact that de la Cruz presented evidence that she was exposed to risk factors known to be associated with cumulative trauma is insufficient to allow a jury to infer causation. *See Beeson,* 835 S.W.2d at 698 (noting that although a jury may draw inferences based upon a single fact situation, it may not "stack an inference upon an inference"). We affirm the district court's order granting Excel's motion for judgment as a matter of law regarding Maria de la Cruz.[8]

### 2. Frances Ponce

Frances Ponce first reported soreness in her right shoulder in September 1990, and she eventually had arthroscopic surgery in October 1991. After surgery, she returned to work on the Whizard table. In June 1992, however, she again began to experience pain

---

[8]As discussed in footnote 1, an earlier jury returned a verdict for Martha Ruiz, a former co-plaintiff whose case was tried prior to this one. After trial, the district court granted Excel's motion for judgment as a matter of law as to Ruiz. A panel of this Court reversed the district court's order and remanded that case back to the district court with instructions to enter judgment on the jury's verdict for Ruiz. *Gutierrez v. Excel Corp.,* 78 F.3d 581 (5th Cir.1996) (table). Despite the factual similarities between the Ruiz case and this litigation, there are two significant differences that support our affirmance of the district court's order granting Excel judgment as a matter of law as to de la Cruz. First, Martha Ruiz suffered from "trigger finger," an injury that is classified as a cumulative trauma disorder. Second, Ruiz presented testimony from Dr. Royce Lewis, one of her examining physicians, indicating that her injury was in fact caused by her use of the Whizard knife.

in her right shoulder, and had corrective surgery in November 1992. Eventually, she returned to work on the Whizard table, but in October 1993, she was placed on medical layoff because of her medical restrictions.

The medical records suggest that Ponce's injury may have been caused by her work with the Whizard knife. Before her first surgery, Ponce was diagnosed as having symptoms consistent with rotator cuff tendinitis or a possible incomplete tear of the rotator cuff in her right shoulder. After completing the surgery, Dr. Robert Carr diagnosed Ponce with having "impingement syndrome with subacromial tendinitis, right shoulder." A few months after this surgery, Dr. Carr stated, "There is some increased stress sensitivity probably caused by her work activities."

Ponce, however, continued working at the Whizard table, and after again experiencing pain in her right shoulder, had surgery in November 1992, this time performed by Dr. Kim Foreman. The postoperative diagnosis regarding this surgery was "AC [acromioclavicular] arthralgia with mild impingement of the right shoulder." Dr. Foreman noted that there was no tear in the rotator cuff. He commented that Ponce did not suffer from specific injury but that she had "developed progressive pain doing repetitive work."

Unlike de la Cruz, Ponce suffered from rotator cuff tendinitis, an injury that may be classified as a cumulative trauma disorder. In addition, the medical records suggest that her injury was "probably caused" from repetitive work. This evidence, along with the testimony showing that use of the Whizard knife involved

exposure to a number of risk factors associated with cumulative trauma, is sufficient to allow a jury to infer causation. *See Beeson,* 835 S.W.2d at 698. We must therefore reverse the order granting Excel's motion for judgment as a matter of law. *See Crosthwait,* 992 F.2d at 528.

Having determined that the district court erred in entering judgment in favor of Excel against Ponce, we conclude that the court committed no abuse of discretion by ordering a new trial. *See Allied,* 996 F.2d at 114-15 (reviewing new trial order for abuse of discretion). In its order granting a new trial, the district court stated that the jury's finding of proximate cause was "contrary to the great weight and preponderance of the evidence admitted at trial," and that the evidence was insufficient to support the award of $275,000 in damages to Ponce. Upon review of the record, we are likewise unable to find any evidence supporting the damage award, and the evidence regarding causation is anything but substantial.[9]

### 3. *Pamela Calderon*

Pamela Calderon first reported pain in her hand and shoulder after working at the Whizard table for approximately one year, and in October 1993, she was placed on medical layoff. Her medical records, however, contain no suggestion that she suffers from any

---

[9]In its order granting Excel judgment as a matter of law, the district court noted that Appellants' own expert witness testified that he had no opinion as to whether any act or omission on the part of Excel caused any of the alleged injuries of the Appellants. This witness, however, never visited the Excel facility and did not meet with Appellants or review their medical records. While this evidence is helpful to Excel, it does not, by itself, preclude Ponce from proving causation in the new trial.

form of CTD. Dr. Foreman initially noted that Calderon suffers from "right trapezius myositis," but Calderon offered no evidence suggesting that this injury is a form of cumulative trauma disorder or that it was caused by repetitive work. Furthermore, Dr. Foreman later revised his diagnosis, noting that Calderon suffers "no impairment" in her shoulder. Calderon never had surgery of any kind. We thus affirm the district court's order denying Calderon's motion for new trial.

## CONCLUSION

For the above reasons, we AFFIRM the district court's order granting Excel judgment as a matter of law as to Maria de la Cruz; REVERSE the district court's order granting Excel judgment as a matter of law, but AFFIRM the order granting Excel a new trial as to Frances Ponce; and AFFIRM the order denying Calderon a new trial. We REMAND the Ponce claim to the district court for a new trial.

AFFIRMED in part, REVERSED in part and REMANDED in part.