ROBERT M. PARKER, Circuit Judge:
The appeal in this diversity case challenges a jury verdict and resulting judgment awarding four plaintiffs a total of $2.8 million, exclusive of prejudgment and post-judgment interest, on products liability and negligence theories against a manufacturer of coal hauling vehicles. The plaintiffs cross-appeal to challenge the jury finding that their own negligence contributed to their injuries. We affirm.
I. PROCEEDINGS
Between May and October 1994, plaintiffs John Bartley[1], Mike Rucker, Chris Luker, Walter Henry and Tim Humber sued Euclid and others asserting personal injury/products liability claims under Texas law. The suits were filed in federal court invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. In December 1995, the district court sua sponte consolidated these actions. Euclid’s motions for summary judgment, challenging the admission of plaintiffs’ expert testimony on the basis of Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), were denied, and the case was tried to a jury. The district court entered judgment on the jury’s verdict which found, inter alia, that Euclid’s coal haulers were defective; that both Euclid and the plaintiffs were negligent; and that the coal haulers caused injuries and damages to the plaintiffs.
II. FACTS
Euclid designs, builds, and markets heavy equipment including 120-ton vehicles used for hauling coal at open pit coal mines. Initially, Euclid’s coal haulers were built with the engine mounted in front of the operator’s cab, which design was termed “long-nosed.”[2] In the mid-1970’s, a new design, termed “short-nosed” because its engine was moved back on the chassis so that it rested partially under the operator’s cab, was introduced.[3] The new design differed from the earlier model in other ways, including using a shorter wheel base, and a trailing arm suspension system with rubber struts instead of steel springs. The short-nosed coal haulers, which are the subject of this litigation, have better visibility from the driver’s seat and better maneuverability, but a considerably rougher ride.
Plaintiffs, males ranging in age from 32 to 46 years, were all employees of Texas Utilities Mining Company (“TUMCO”) and operated Euclid short-nosed coal haulers in the course and scope of their employment. They brought suit against Euclid claiming that they had sustained back injuries as a consequence of long term repetitious trauma and severe vibrations experienced while operating Euclid’s short-nosed coal haulers.
*267 III. ADMISSIBILITY OF EXPERT WITNESS TESTIMONY
a. Standard of review
Euclid contends that the district court abused its discretion and violated its gate-keeping responsibilities under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) by admitting the plaintiffs’ expert testimony. We review district court rulings on the admission of expert testimony for abuse of discretion. See General Elec. Co. v. Joiner, —— U.S. -, -, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); see also Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir.1998)(en banc).
b. District court ruling
Plaintiffs’ experts fall into two categories. Dr. Charles Aprill, Dr. Richard Bunch and Dr. Kelvin Samaratunga had formal training in the medical and physical therapy fields and were called to testify concerning causation. Arthur Chaseling and Geoff McDonald have formal training in the field of engineering and were called to testify regarding alleged design defects and potential alternative designs. The district court specifically found that both groups possessed sufficient qualifications to be considered experts, that their proffered evidence was reliable and relevant and that the probative value of the evidence was not “substantially outweighed by any type of prejudice.”
The district court first considered whether the experts satisfied the requirements set out by Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[4]
The Federal Rules of Evidence provide:
Rule 702. Testimony by Experts If scientific, technical, or other specialized knowledge will assist the trier of fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
The district court began its analysis by acknowledging that, under Texas law, plaintiffs’ medical causation evidence, as well as the engineering evidence, are subject to the standards set out by the Supreme Court in Dau-bert.
The district court listed the non-exclusive Daubert factors which it applied: (1) whether a theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether a potential rate of error has been established; and (4) whether the theory is “generally accepted” within the scientific community. See Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786. The district court then cited United States v. Downing, 753 F.2d 1224 (3rd Cir.1985) in support of three additional factors that the district court found instructive to a reliability determination:(l) the existence of a body of literature dealing with a particular topic or technique; (2) the qualifications and professional stature of the witness in question; and (3) the relationship of the current theory to other methods of analysis.
c.Causation experts
Euclid specifically challenges the district court finding that Plaintiffs’ causation experts offered reliable evidence.
Dr. Aprill, a medical doctor specializing in diagnostic radiology, evaluated Plaintiffs’ spinal problems and researched the cause of those problems. Aprill’s research involved comparing the Magnetic Imaging Resonance (“MRI”) scans of 90 individuals who drove the coal haulers that are the subject of this case with the MRI scans of 80 back pain patients, age and sex matched to the hauler drivers. Aprill employed mainstream scientific research techniques to preclude bias in his conclusions. These included Aprill read *268 ing MRIs without knowing whether the scans were taken from hauler drivers or from the control group, as well as intraobserver reliability checks by which a colleague selected random MRIs for double readings without Aprill’s knowledge. He also testified concerning the results of another study of end-plate fractures conducted in Minneapolis, finding that the MRIs of 38% of asymptomatic Minneapolis subjects revealed broken end-plates compared to 41% in his study.
Aprill concluded that the MRIs of the hauler driver group demonstrated multiple endplate fractures at multiple levels in the dorsal and lumbar spines and that accelerated disc degeneration occurred more often and at more levels in the hauler driver group than in the comparable group of people with back pain. He termed this finding statistically significant. The multiple end-plate fractures demonstrated by the coal hauler population suggested to Aprill that those individuals were subject to repetitive vertical compression resulting in fractured endplates. Aprill’s opinions were supported by an article appearing in 1992 in Clinical Biomechanics, stating that exposure to whole body vibrations causes structural damage to the endplate and subchondral bone. Aprill stated that he found this “fingerprint” condition throughout the hauler driver population. Although endplate abnormalities are fairly common, the drivers had not only more end plate fractures than the control population, but also an uncommon distribution of these fractures. Specifically, Aprill testified that in mature human populations most injuries appear in the lumbar (lower back) region, with cervical (neck) injuries next and dorsal spine injuries a distant third. The number of dorsal injuries Aprill found in the hauler driver population was very unusual. Further, the control group included individuals who had exposure to other risk factors identified by Euclid as possibly causing Plaintiffs’ back injuries, including being overweight, smoking, and truck driving. However, the significant number and characteristic distribution of injuries pointed to hauler driving as the single risk factor resulting in the “fingerprint” injuries which showed up in Aprill’s study.
Dr. Samaratunga, the plaintiffs’ treating neurosurgeon, relied partially on Aprill’s MRI study for his conclusion that the end-plate fractures were caused by whole body vibrations. Dr. Bunch, a physical therapist and ergonomics expert, testified that he had performed an ergonomic assessment of the coal haulers and concluded that the coal haulers contributed to the plaintiffs’ injuries.
The district court, after reviewing the curriculum vitae of Dr. Aprill, Dr. Samaratunga and Dr. Bunch, found that each of these witnesses met the requirements of Rule 702 for designation as expert witnesses in this matter. In addition to the doctors’ credentials, the court noted that there is a body of literature dealing with repetitive trauma back injuries, the doctors’ theories can be tested, and that the methodology that the doctors used derived from other accepted methodologies. Based on these facts, the district court determined that the testimony was reliable under the standards set forth in Daubert.
Euclid attacks the district court’s finding that these causation experts provided reliable testimony. First, Euclid contends that the “mere existence” of a body of literature on a given subject does not speak to the question of reliability. Second, they point out that the qualifications and professional stature of a witness, standing alone, do not evidence reliability. Third, they complain that the district court’s conclusion that the experts’ theories are “derived from methodology which relates to other accepted methodologies” is not helpful in determining reliability. Finally, they list those Daubert factors which do not point to reliability in this case: the potential rate of error in the causation witnesses’ work was not established, the “general acceptance” of their conclusions was not established, and Dr. Samaratunga was allowed to testify concerning causation, when his area of expertise was established as treatment of back pain, not etiology.
Given the broad discretion vested in trial courts to “keep the gate” for the purpose of admitting or excluding opinion testimony, we cannot say that the district court abused its discretion in this case. See Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir. *269 1998)(en banc). Euclid asserts that each factor, standing alone, may not have been enough to support the admission of opinion testimony. However, the district court considered the Daubert factors in the aggregate, and determined that, on balance, the experts’ opinions were sufficiently reliable to merit admission into evidence and testing in the fire of cross examination and contrary evidence. We find that the district court did not abuse its broad discretion in that exercise. See General Electric Co. v. Joiner, — U.S. -, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997); see also Moore v. Ashland Chemical, Inc., 151 F.3d 269 (5th Cir.1998)(en banc).
d. Liability experts
Although Euclid generally complains of the admission of testimony by liability experts McDonald and Chaseling, the only basis for the challenge advanced on appeal concerns the manner by which Chaseling measured the vibration levels in the coal haulers.
Euclid contends on appeal, as it did at trial, that it was inappropriate for Chaseling to measure the vibrations in the coal haulers by attaching an accelerometer to the metal frame below the seat. Chasling responded to that contention, testifying that, pursuant to International Standards Organization (“ISO”) standards, it is permissible to measure the vibrations from the frame rather than from the seat as long as the transmission characteristics of the seat cushion are taken into account when calculating the actual vibration. Chasling testified further that he believed that measuring the vibration from the frame gave better comparable results from truck to truck because the condition of the seating material varies widely.
Euclid also complains that Chaseling turned on the accelerometer in 16-second bursts only when told to do so by people who were suing Euclid, gathering less than seven minutes of vibration data over a fifteen hour span of time, which resulted in vibration data that was unreliable. Chaseling explained during his testimony that he was attempting to record vibration measurements when the hauler was in a loping mode. For this he relied on the input of the hauler drivers to advise him when they felt the machine phase into that mode.
The district court noted that, “[a]s a general rule, questions relating to the bases and sources of an expert’s opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury’s consideration.” Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir.1987). The question for the district court was whether the “analytical gap” between the causation opinion offered by the expert and the scientific knowledge and available data advanced to support that opinion is too wide. Moore v. Ashland Chemical Inc., 151 F.3d 269 (5th Cir.1998). Here the district court determined that it was not.
[Tjhese witnesses’ theories can be tested, their qualifications are adequate, literature exists dealing.with common design principals and methodologies for testing such designs, and the methods from which these opinion were reached are related to other methodologies and theories in the area of engineering safety and design. In the Court’s opinion, these factors render this evidence reliable under Daubert.
Memorandum Opinion and Order, January 2, 1997, at 6. We conclude that the district court did not abuse its discretion in finding that the expert testimony offered by Chaseling and McDonald was reliable and relevant and therefore admissible, and that it was within the province of the jury to weigh the credibility of that evidence in light of Euclid’s criticism that Chasling’s methods for testing vibration levels yielded inaccurate results.
IV. SUFFICIENCY OF THE EVIDENCE
Euclid moved for judgment as a matter of law based on the insufficiency of the evidence to support the plaintiffs’ products liability and negligence claims. The district court denied the motion. We review that ruling de novo, applying the same standards employed by the district court. See Gutierrez v. Excel Corp., 106 F.3d 683, 686 (5th Cir.1997). “All evidence with all reasonable inferences must be considered in the light most favorable to *270 the nonmoving party.” Id. Judgment as a matter of law should have been granted if there was “no legally sufficient evidentiary basis for a reasonable jury to find for” the plaintiffs on issues they bore the burden of proving. Fed.R.Civ.P. 50(a).
The jury found that the preponderance of the evidence[5] established that there were design and marketing defects in the coal haulers at the time they left the possession of Euclid that were a producing cause of the plaintiffs’ injuries. The jury also found that the preponderance of the evidence established that negligence by both Euclid and the plaintiffs proximately caused the injuries in question. On appeal, Euclid challenges the sufficiency of the evidence as to design defects, marketing defects, Euclid’s negligence and causation.
а. Strict liability design defect
In determining whether a product is defectively designed, “the jury must conclude that the product is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.” American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 432 (Tex.1997). Liability for a design defect may attach even if the defect is obvious or apparent. Turner v. General Motors Corp., 584 S.W.2d 844, 850 (Tex.1979). Whether a product has a design defect is evaluated in the light of economic and scientific feasibility of safer alternatives. Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 746 (Tex.1980).
We find no merit in Euclid’s argument that the evidence is not sufficient to support the jury’s verdict because plaintiffs’ experts did not use the words “unreasonably dangerous.” Although an expert may testify to an ultimate issue, such testimony is not required to support the jury’s verdict. See Fed.R.Evid. 704(a). Rather, we must look to all the evidence, drawing all reasonable inferences in favor of the plaintiffs in evaluating the sufficiency of the evidence. See Crosthwait Equipment Co., Inc. v. John Deere Co., 992 F.2d 525, 528 (5th Cir.1993).
Chasling testified that the vibration of the hauler violated the health and safety thresholds of International Safety Organization (“ISO”) Standard 2631.[6] Under that standard, the hauler drivers should not be exposed to vibrations in excess of established levels for more than 1.6 hours in a 24 hour period. The plaintiffs were routinely exposed to vibrations in excess of ISO standards for a majority of their 8 to 12 hour shifts. It was not simply the intensity of the vibrations but the vector of forces caused by a combination of vertical and longitudinal vibrations that produced injury. Evidence supports a determination that the “geometry” of the short-nose haulers, i.e. the shorter wheel base and placement of the engine, caused the vibrations. Those vibrations were exacerbated by the substitution of rubber struts for the steel springs which had been used in the long-nose haulers. The evidence identified Euclid’s own long-nose hauler as a safe, feasible alternative from both an engineering and economic perspective. Euclid focuses on evidence that the short-nose design was a response to user demand for better maneuverability and visibility, arguing that such demand made the older design obsolete and therefore non-feasible. While Euclid’s line of reasoning was certainly relevant, this court is not empowered to sit as a super jury, substituting its view for the jury’s assessment of the weight and credibility to assign to the conflicting feasibility evidence. *271 See Gutierrez v. Excel Corp., 106 F.3d 683, 687 (5th Cir.1997).
Based on the foregoing, we find that the evidence before the jury was sufficient to support its conclusion that the short-nosed coal haulers are unreasonably dangerous as designed.
b. Negligence: marketing defect, failure to warn.
Euclid challenges on appeal the jury’s determination that there was a defect in the marketing of the coal haulers at the time these products left the possession of Euclid.
Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the Plaintiff by the Defendant; (2) a breach of that duty; (3) an actual injury to the Plaintiff; and (4) a showing that the breach was a proximate cause of the injury. See Williams v. Southern. Pacific Transp. Co., 804 S.W.2d 132, 138 (Tex.App. — Houston [1st Dist.] 1990, writ denied). While strict liability focuses on the condition of the product, negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in designing and producing its product. American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 437 (Tex.1997).
A product may be unreasonably dangerous because of a defect in marketing. See Caterpillar, Inc. v. Shears, 911 S.W.2d 379, 382 (Tex.1995). A defendant’s failure to warn of a product’s potential dangers when warnings are required is a type of marketing defect. See id. A manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product. See American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420 (Tex.1997). Euclid contends that the evidence was insufficient to support the jury’s verdict that the short-nosed haulers were unreasonably dangerous and that Euclid knew or should have known of a potential harm to users because of the nature of its product. Euclid does not dispute that it failed to warn plaintiffs of unreasonably dangerous characteristics of its short-nose haulers.
A manufacturer has a duty to test and inspect his product to uncover scientifically discoverable dangers before the product is sold. See Owens-Corning Fiberglas Corp. v. Malone, 916 S.W.2d 551, 562 (Tex.App.— Houston [1st Dist.], 1996, writ granted). A product must not be made available to the public without disclosure of those dangers that the application of reasonable foresight would reveal. See id. There is evidence in the record that Euclid never iide-tested the short-nosed hauler before placing it on the market. In 1978, after an Australian purchaser complained about the rough ride of its short-nosed hauler, Euclid performed some ride tests specifically on the Australian hauler and found the ride to be unacceptable. However, the short-nosed haulers were still not tested by Euclid in accordance with ISO procedures or otherwise, even though Euclid’s chief engineer admitted that he was aware of the ISO procedures for whole body vibration testing. Euclid made no design changes in response to the reports made after the Australian testing, and even canceled its Ride Improvement Program.
Further, there was evidence that Euclid knew or should have known that three people sustained injuries caused by the rough ride of the short-nosed hauler sold to the Australian mine. Euclid took the position that the complaints were limited to one machine in Australia. The district court admitted into evidence a letter which had been sent to Morgan Equipment, an authorized Euclid dealer, which referenced “3 recent injuries (1 compensatable) claimed to be caused by the rough ride of’ the Euclid short-nosed hauler. The letter also references “representations by the union on driver discomfort....” Euclid contends that this is not evidence of Euclid’s negligence because there is no evidence that anyone at Euclid saw the letter and because it is not clear that the injuries referred to in the letter were same type injuries experienced by plaintiffs in this case. Euclid acknowledges that they were aware that the Australian short-nosed hauler had an unacceptably rough ride[7], but points to *272 evidence that the Australian hauler was a “lemon,” and that it was specially modified to the customer’s specifications, operated on rougher roads, and that these differences between the Australian hauler and the Texas haulers excused Euclid from warning the Texas buyers about the Australia rough ride problems.
The trial record contains evidence upon which a rational jury could base a rejection of Euclid’s position. Euclid entered into a contract with Battelle Laboratories in February 1978, later expanded in May 1978, under which Euclid would pay $17,500 to Battelle to solve the “ride problem” in its short-nosed haulers. Euclid also initiated a Ride Improvement Program during 1978, which was later discontinued. These efforts, combined with the letter and the failure to test the equipment prior to marketing is sufficient to support the jury’s conclusion that Euclid knew or should have known of the potential harm to users because of the rough ride problems of the short-nosed haulers.
c. Causation
Causation is an element of both the plaintiffs’ strict products liability claims and their negligence claims. See Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.1995). Strict liability requires proof of a producing cause, while proximate cause is the test in negligence actions. See General Motors Corp. v. Saenz, 873 S.W.2d 353, 357 (Tex.1993).
A producing cause is an “exciting or contributing cause which in the natural sequence, produced the injuries or damages complained of.” Haynes & Boone v. Bowser Bouldin, Ltd., 896 S.W.2d 179, 181 (Tex.1995).
Proximate cause, on the other hand, consists of both cause in fact and foreseeability. See Union Pump Co. v. Allbritton, 898 S.W.2d 773, 775 (Tex.1995). Cause in fact means that a defendant’s acts or omissions were a substantial factor in bringing about a plaintiffs injury. Id. Foreseeability is satisfied by showing that the actor, as a person of ordinary intelligence, should have anticipated the danger to others by his negligent act. See McClure v. Allied Stores of Tex., Inc., 608 S.W.2d 901, 903 (Tex.1980). Foreseeability does not require the actor to anticipate the particular accident, but only that he reasonably anticipate the general character of the injury. See El Chico Corp. v. Poole, 732 S.W.2d 306, 313 (Tex.1987).[8]
There need not be direct proof of causation. The jury may infer proximate cause from the surrounding circumstances. See Mosley v. Excel Corp., 109 F.3d 1006, 1009 (5th Cir.1997). If a negligent act actively aids in producing an injury, it need not be the sole cause, but it must be a concurring cause, and such as might reasonably have been contemplated as contributing to the result. See McClure, 608 S.W.2d at 904. However, causation “must be established by probative evidence, not by mere conjecture or guess.” Gutierrez v. Excel Corp., 106 F.3d 683, 687 (5th Cir.1997).
The question for this court is whether there was sufficient evidence to support the jury’s conclusion that Plaintiffs’ back injuries were, more likely than not, caused by driving Euclid’s coal haulers. Of course, there is not a precise fit between science and the applicable legal burdens of proof. However, when the incidence of a disease or injury is sufficiently elevated due to exposure to a purported source of injury, a plaintiff can raise a fact question on causation by presenting evidence that he was exposed to that substance and exhibits the disease or injury. See Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706 (Tex.1997), citing Daubert v. Merrell Dow Pharms., Inc., 43 F.3d 1311, 1320 n. 13 (9th Cir.1995)(on remand). The question remains what quantum of elevation is sufficient to satisfy the preponderance of evidence burden of proof. The *273 Texas Supreme Court seemingly answered this question, holding that epidemiological evidence should show that the risk of an injury or condition in the exposed population was more than double the risk in the unexposed or control population. Havner, 953 S.W.2d at 716. However, an intermediate Texas appellate court subsequently addressing the Hamer opinion takes the position that Havner did not “set any strict rules regarding what types of evidence would be sufficient or not sufficient to support a finding of causation.” Minnesota Mining and Manufacturing Co. v. Atterbury, 978 S.W.2d 183, 197 (Tex.App. — Texarkana 1998)(1998 WL 436916 at *15). There is no requirement that a party must have reliable epidemiological evidence of a relative risk of 2.0 or greater. Id. Reliable evidence of relative risk less than 2.0 can be considered, but must be supported by other credible, reliable evidence of causation. Id. Further, epidemiological evidence with a relative risk of 2.0 or greater does not automatically pass a sufficiency review. Id.
Assuming, without deciding, that Hamer’s rule controls,[9] the evidence before the jury more than satisfies the relative risk of 2.0 standard. According to Aprill’s testimony, the plaintiffs’ condition is revealed in their MRIs as a “fingerprint” of a characteristic number and distribution of end plate fractures which is essentially unique to hauler drivers. While 68% of the control group exhibited some evidence of end plate fractures, none of those individuals exhibited the characteristic injuries found in 90% of hauler drivers, that is, a pattern of back pathology discernable from the number, severity and distribution of end plate fractures. While the test formulated in Hamer, if applicable, requires incidence of “fingerprint” conditions in the hauler driver population double that of the control group, the evidence established that the fingerprint condition found in 90% of the hauler drivers existed in 0% of the control population. Aprill additionally testified that, on average, the hauler drivers had twice as many end plate fractures as the control group. Aprill explained to the jury that end plate fractures are caused by vertical compression stress on the spine. If a person falls and lands hard on his buttocks, this may cause an individual end plate to crack. Such injuries appear most often at the top of the lumbar spine. However, long-term exposure to whole body vibration causes multiple end plate fractures throughout the spine. The control group exhibited the former pattern of end plate fractures, while the hauler drivers exhibited the latter. This evidence is sufficient to support the jury’s verdict on the issue of causation under the Hamer standard.
V. STATUTE OF LIMITATIONS
a. The Texas Discovery Rule
In Texas, a personal injury action must be filed “not later than two years after the day the cause of action accrues.... ” Tex.Civ.PRac. & Rem.Code Ann. § 16.003(a). Generally, accrual occurs on the date the plaintiff first becomes entitled to sue the defendant based upon a legal wrong, even if the plaintiff is unaware of the injury. Zidell v. Bird, 692 S.W.2d 550, 554 (TexApp.—Austin, 1985, no writ).
The “discovery rule” is an exception to this general rule. See Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.1990). Under the Texas discovery rule, the accrual of a cause of action is deferred in eases in which the alleged wrongful act and resulting injury were inherently undiscovera-ble at the time they occurred but may be *274 objectively verified. See S.F. v. R.V., 933 S.W.2d 1, 6 (Tex.1996).
Euclid asserted at trial that the statute of limitations barred the Plaintiffs’ claims and the issue was submitted to the jury. The jury found that Plaintiffs failed to file their lawsuits within two years of the date they first suffered injury. The jury made an additional findings that 1) the plaintiffs filed their lawsuits within two years of the date they first knew, or in the exercise of reasonable diligence should have known, that their injuries were caused by driving the coal haulers; 2) plaintiffs’ injuries were inherently undiscoverable; and 3) plaintiffs’ injuries were objectively verifiable.
b. Standard of Review
On appeal, Euclid challenges the sufficiency of the evidence to support the jury’s finding regarding the inherently undiscoverable and objectively verifiable nature of the injuries. Like the sufficiency of the evidence issues on liability, we review this ground of error by considering all evidence, drawing all reasonable inferences in the light most favorable to the nonmoving party. Gutierrez v. Excel Corp, 106 F.3d 683, 686 (5th Cir.1997). We will reverse the denial of Euclid’s motion for judgment as a matter of law if there was not substantial evidence “such that reasonable jurors might reach different conclusions ...” Id. at 686-87.
c. Inherently undiscoverable injuries
An injury is “inherently undis-coverable” if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence. S.V. v. R.V., 933 S.W.2d at 7. Euclid argues that because Plaintiffs were aware of a painful “backslapping” sensation while driving the coal haulers, their injuries were immediately “discoverable.” Plaintiffs counter that, in spite of the uncomfortable ride, they had no reason to suspect the insidious damage that was occurring within their spines. We conclude that the evidence was sufficient to support the jury’s “inherently undiscoverable” finding. Repetitive trauma injuries like those at issue in this case are not readily susceptible to discovery at the time of a particular, individual contact. Rather, the fractured end-plates throughout the plaintiffs’ spines which were discovered later, were “unexpected latent injuries] which were unknown and unknowable at the time of the traumatic event.” See Albertson v. T.J.Stevenson & Co., Inc., 749 F.2d 223, 233 (5th Cir.1984).
d. Objectively verifiable injuries
Euclid contends that there is not legally sufficient evidence to support the jury’s determination that the Plaintiffs injuries were objectively verifiable. Euclid relies on language from the Texas Supreme Court’s opinion in S.V. v. R.V., 933 S.W.2d 1 (Tex.1996): “For the purpose of applying the discovery rule, expert testimony on subjects about which there is no settled scientific view ... cannot provide objective verification of [alleged wrong and injury.]” Id. at 18, 39 Tex. Sup. Ct. J. 386. S.V. held that expert opinion regarding recovered memories of childhood sexual abuse could not meet the objective verifiability element for the Texas discovery rule. The court noted the lack of consensus in the scientific community concerning the reliability of recovered memory, id. at 17-18, but noted that expert opinion coupled with other evidence could provide the kind of verification required. Id. at 16.
Here, the jury heard evidence that plaintiffs suffered herniated intervertebral discs and degenerated spines, confirmed by recognized diagnostic testing. We hold that such evidence, which came in the form of testimony from medical experts, relying on long accepted methods of reading and interpreting MRIs, is sufficient to support the jury’s affirmative answer on the “objectively verifiable” nature of the injuries.
e. Limitation bar as to Appellee Humber
Euclid devotes a single sentence to its contention that a unique limitations argument bars the claim of Tim Humber because a doctor told him more that two years before he filed suit that repetitious trauma had compromised his back. However, the jury heard evidence that Humber’s doctor had actually diagnosed a herniated disc and it was TUM-CO that advised him to claim his injury was due to repetitive trauma disease so that an *275 injury date could be established for workers’ compensation purposes. Such evidence does not preclude a reasonable jury from finding that Humber discovered that he suffered a repetitive trauma injury less than two years before he filed suit or that his injury resulted from driving the coal haulers.
VI. PROPORTIONATE RESPONSIBILITY[10]
The district court reduced the award of damages to Plaintiffs as a consequence of the jury’s findings concerning Plaintiffs’ proportionate responsibility for their injuries.[11] A take nothing judgment was entered as to Rucker because his proportionate responsibility was found to be 70%. Plaintiffs filed a cross-appeal, arguing that there is insufficient evidence to support the jury’s findings regarding their proportionate responsibility for their injuries and that they should have been granted a judgment as a matter of law on that issue.
a. Was the issue preserved for appellate review?
Initially, we must determine whether Plaintiffs preserved the right to appeal the jury’s proportionate responsibility findings. Euclid contends that Plaintiffs failed to comply with the requirements of Fed.R.Civ.P. 50, thus precluding our review of the sufficiency of the evidence to support the jury’s verdict on this issue. Generally, sufficiency of the evidence is not reviewable on appeal unless a pre-verdict motion for judgment as a matter of law was made in the trial court at the conclusion of all the evidence. See McCann v. Texas City Refining, Inc., 984 F.2d 667, 671 (5th Cir.1993). However, strict compliance with Rule 50 is not necessary so long as the purposes of the requirement have been satisfied. Greenwood v. Societe Francaise De, 111 F.3d 1239, 1244-45 (5th Cir.), cert. denied, — U.S. -, 118 S.Ct. 558, 139 L.Ed.2d 400 (1997). “These purposes are met when the court and the [opposing party] are alerted to the grounds on which the [complaining party] contends the evidence is insufficient prior to the submission of the case to the jury.” Id. at 1245.
In this case, the evidence closed shortly before noon on Thursday, January 30, 1997. The trial court then considered Euclid’s motion for judgment as a matter of law and began work on the jury charge. After 6:00 p.m. the following day, after completing what the court termed its “informal charge conference” the court allowed the parties to go on the record with “comments, requested instructions, and objections.” At that time, Plaintiffs objected orally, on the record, to the submission of contributory negligence to the jury on the ground that there was not legally sufficient evidence to support the submission of the evidence to the jury. The court overruled the objection. After the verdict was returned, Plaintiffs filed a “renewed” motion for judgment as a matter of law addressing the sufficiency of the evidence of contributory negligence.
It is undisputed that Plaintiffs failed to file a formal, written, pre-verdict motion for judgment as a matter of law. However, we find that Plaintiffs’ objection to the jury charge on sufficiency of the evidence grounds served as the functional equivalent of a formal pre-verdict motion. See Greenwood, 111 F.3d at 1245, n. 7 & 8; see also Wells v. Hico ISD, 736 F.2d 243, 251-52 (5th Cir.1984). The issue of sufficiency of the evidence on plaintiffs’ proportionate responsibility is thus preserved for appellate review.
*276 b. Sufficiency of the evidence on proportionate responsibility
Plaintiffs contend that there is no evidence that any of the Plaintiffs had an awareness of the cumulative trauma they were suffering as a result of their exposure to Euclid’s coal haulers. Nor, they argue, is there any evidence in the record to indicate that any of the Plaintiffs should have had knowledge of the dangerous and unsafe nature of the vibration levels they were receiving while driving the coal haulers.
Euclid answers that the evidence supports findings that Plaintiffs were negligent and at least partially responsible for them alleged physical injuries and damages. Euclid points to evidence that the coal hauler, like any other vehicle, had a rougher ride when road conditions were bad and the driver was driving too fast. The record contains evidence that there was no reason for driving the haulers at top speed and in fact TUMCO management wanted its drivers to slow down. Further, there was evidence that Rucker continued to smoke, though doctors had told him smoking aggravates his back injury.
Given evidence that the Plaintiffs knew the vibrations worsened based on the speed the haulers were driven and that the drivers drove the haulers faster than their employer recommended, we find sufficient evidence to support the proportional negligence findings of the jury. Further, the evidence is sufficient to sustain the jury’s finding that Ruck-er was responsible for 70% of the negligence that resulted in his injuries, thereby precluding any obligation for Euclid to compensate him for his damages.
VII. JURY CHARGE
a. Euclid’s challenge to the jury charge on the issue of causation
Concerning the causation element of Plaintiffs’ negligence cause of action, the district court instructed the jury that
“[P]roximate cause” means that cause which in a natural and continuous sequence, unbroken by any new and independent cause, produces an event without which that event would not have occurred, and which event or some similar event should have been foreseen by a person in the exercise of ordinary care under the same or similar circumstances....
The district court separately defined the causation element of the Plaintiffs’ products liability cause of action:
“[Producing cause” as used in these instructions, means an efficient, exciting, or contributing cause, which in a natural and continuous sequence, produces the injury in question....
Euclid complains that the district court did not accept its proposed jury instruction that in order to impose liability on negligence or products liability claims, the jury must determine that Euclid’s conduct was a substantial factor and a “but for” cause of the-plaintiffs’ injuries, citing Texarkana Memorial Hosp., Inc. v. Murdock, 946 S.W.2d 836 (Tex.1997) and Gutierrez v. Excel Corp., 106 F.3d 683, 687 (5th Cir.1997).
This court has stated the standard of review for jury charge challenges:
First, the challenges must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case. If the party wishes to complain on appeal of the district court’s refusal to give a proffered instruction, that party must show as a threshold matter that the proposed instruction correctly stated the law.
Flores v. Cameron County, Tex., 92 F.3d 258, 262 (5th Cir.1996)(internal quotation marks omitted).
Euclid complains that the jury charge did not adequately inform the jury that because the injuries claimed by the plaintiffs do not arise from any discrete event, the plaintiffs bear the burden of showing that the defect or negligence actually caused the injuries. We are not convinced that the charge as a whole, which employed language identical to the definitions provided in the Texas Pattern *277 Jury Charges, creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. We therefore will not disturb the verdict based on Euclid’s challenge to the jury instructions on causation.
b. Rucker’s challenge to the jury charge
Rucker contends on cross-appeal that the district court abused its discretion by refusing to grant his request that the jury be instructed on the effect of its answers regarding proportional responsibility. Unlike Texas state courts, federal courts are free to tell juries the effect of their answers. See Martin v. Texaco, Inc., 726 F.2d 207, 216 (5th Cir.1984). The decision whether to instruct the jury on the effects of its answers is “a matter of discretion for the trial court.” Martin v. Texaco, Inc., 726 F.2d 207, 216 (5th Cir.1984).
Rucker further complains that the trial court refused his requested special instruction that “a plaintiff’s negligence, if any, in merely failing to discover a product defect or guard against the possibility of its existence cannot form the basis of an affirmative finding against a plaintiff on the issue of negligence.” Rucker takes the position that the omission of these two instructions led to an incomplete and erroneous charge on Euclid’s proportionate responsibility defense and affected the outcome of Rucker’s ease. Rucker alleges that, taken together, these two jury charge decisions by the district court amounted to error in the jury instructions that prejudiced the outcome of the case. See Aero Int’l, Inc. v. United States Fire Ins. Co., 713 F.2d 1106, 1113 (5th Cir.1983).
In Perricone v. Kansas City Southern Rwy. Co., 704 F.2d 1376 (5th Cir.1983), the district court gave a supplemental instruction which informed the jury that the Plaintiff would not recover any damages if the Plaintiff was found to be more than 50% negligent. This Court affirmed the giving of the supplemental instruction in the absence of contemporaneous objection. Id. at 1377. However, Perricone does not mandate the giving of such instructions. We find that the failure of the district court to instruct the jury on the effect of its answers concerning the Plaintiffs’ proportionate responsibility in this case does not call into question the jury’s factual determination that Plaintiffs were negligence and that their negligence was a producing cause of their injuries. [1]
In a strict liability cause of action, a plaintiffs failure to discover or guard against a product’s defect is not a defense to a defendant’s liability. See Keen v. Ashot Ashkelon, 748 S.W.2d 91 (Tex.1988). Therefore, Rucker’s requested charge was a correct statement of the law in that regard. However, we are not left with substantial or eradieable doubt that the jury was properly guided in its deliberations. See Flores, 92 F.3d at 262. Both Plaintiffs and Euclid developed through evidence and argument before the jury their theories concerning proportionate responsibility of the Plaintiffs. We will not reverse the verdict because, based on the entire record, we do not conclude that the requested instructions would have affected the outcome of the case. Id.
VIII. CONCLUSION
Based on the foregoing, we affirm the district court’s judgment.
AFFIRMED.

. John Bartley advised this court that he has settled his claim and withdrawn his appeal.

. Euclid's long-nosed coal hauler is model 208 LDT.

.Euclid’s shorl-nosed coal hauler is model 322 NDT.

. In January 1997, when the district court ruled on this motion, the Fifth Circuit had not squarely addressed whether Daubert applied to “non-scientific" expert testimony. The district court noted that uncertainty, but found it to be of no consequence to the determination of the motion, because all of the experts satisfied the requirements of Daubert. The subsequent decision in Watkins v. Telsmith, Inc., 121 F.3d 984 (5th Cir.1997), holding that Daubert is not limited to "scientific knowledge,” is therefore satisfied by the district court’s analysis.

. The district court instructed the jury that all claims in this case must be established by a preponderance of the evidence, which "means evidence that persuades you that the plaintiffs' claims are more likely true than not true.” Charge to the Jury, at 11. Neither party challenges the district court’s articulation of the applicable burden of proof.

. Euclid points out that the ISO standards are not laws nor regulations, but are voluntary consensus standards for evaluation. Therefore, they contend, without specifically challenging the admission of evidence concerning ISO standards, that their failure to comply with the standards is not relevant to the issues in this case. However, evidence concerning ISO standards was before the jury, and we conclude that such evidence was relevant and the jury was free to assign whatever weight to the evidence that they determined was appropriate.

. John Stoneman, the managing director of Morgan Equipment Company, the Euclid dealer that *272 sold the short-nosed hauler to the Australian mine, testified concerning the lengthy history of attempts by both Morgan and Euclid to determine the cause of and to remedy the ride problems in the Australian hauler.

. Producing cause requires a lesser burden than proximate cause because it does not require foreseeability. Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 935 (Tex.Civ.App. — Texarkana 1997, writ denied).

. Havner amounts to the Texas Supreme Court’s definition of "more likely than not burden of proof.” See Havner, 953 S.W.2d at 717. Arguably, the definition of the applicable burden of proof is procedural rather than substantive, and therefore controlled by federal rather than state law. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 426, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)(noting that classification of a law as "substantive” or "procedural” is “sometimes a challenging endeavor.”) The Fifth Circuit has not weighed in on the question of whether evidence must show more than doubling of the risk to support a juty’s finding of causation. The federal circuits which have considered the question have reached diverse results. See Havner, 953 S.W.2d at 716 (listing cases demonstrating the split). The parties neither briefed nor argued the issue, and it is not outcome determinative in this case. Therefore, we decline to reach it.

. This issue is referred to in the record and in much of the precedential jurisprudence as "contributory negligence” or "comparative responsibility.” Texas law was modified in 1995 to its present form which refers to the same concept as "Proportionate Responsibility.” See Tex.Civ.Prac. & Rem.Code Ann , Ch.33.

. Question No. 4. For each person or product found by you to have caused the injury, find the percentage caused by ...
b. Chris Luker 30 Euclid, Inc. 70 ...
c. Mike Rucker 70 Euclid, Inc. 30 ...
d. Waller Henry 50 Euclid, Inc. 50 ...
e. Tim Humber 40 Euclid, Inc. 60....

. Euclid vigorously contests the probity of conclusions based on testing of a single hauler in Australia almost 20 years ago. Euclid contends that the haulers sent to Australia were specially modified to the customer’s specifications. The *279 company has also conceded that the hauler sent to Australia may have been a lemon.